

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### (EVANSVILLE DIVISION)

DEMARKO KEMP,                    )
                                )
      Movant,                   )
                                )
v.                              )     Case No.  3:06-cr-36-00001
                                )
UNITED STATES OF AMERICA,        )
                                )
      Respondent                )

## MOVANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 (f) (3) TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES Movant, DEMARKO KEMP, ("Kemp"), appearing *pro se,* and in support of his Motion shows as follows:

## I.  JURISDICTION

Jurisdiction is vested in this Court under 28 U.S.C. § 2255(f) (3). Under 28 U.S.C.A. § 2255, federal prisoners "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States" may move the district "court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C.A. §2255(a). Section 2255(f) imposes a one-year limitations period upon the filing of § 2255 motions, which usually runs from "the date on which the judgment of conviction becomes final."

1

28 U.S.C.A. § 2255(f) (1). Section 2255(f)(3), however, provides that the one-year limitations period begins to run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C.A. § 2255(f) (3). See *Dodd v. United States*, 545 U.S. 353, 357-58 (2005) (holding that the one-year limitations period runs "from the date on which the right ... was initially recognized by th[e] [Supreme] Court").

## II. STATEMENT OF THE GROUNDS FOR REVIEW

A.    Whether counsel grossly misinformed Kemp of his eligibility for Parole in discussing the plea agreement at hand and whether during plea negotiations counsel, failed to properly advise his client of the term of imprisonment he could face by accepting the plea bargain.

B.    Whether the Court erred by sentencing Kemp to an enhanced sentence not shown in the Indictment or decided by a jury.

C.    Whether the Court erred in enhancing Kemp.  In *Descamps v United States*, a 2013 Supreme Court case regarding prior offenses of a Career Criminal, a new categorical approach was mandated for enhancing defendants on predicate convictions.

## III.   <u>STATEMENT OF THE CASE</u>

A.   <u>Relevant Procedural Background</u>

On  December 8, 2006, Demarko Kemp was charged by Information with conspiracy to possess with intent to distribute in excess of 500 grams or more of a substance containing methamphetamine, in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(A)(viii), and 846. On that same date, Kemp filed a petition to enter a plea of guilty (in a guilty plea agreement), which was submitted to the Court and all parties on that date. The guilty plea stated that Kemp's offence level was 36 an that the readily provable quantity of methamphetamine attributable to Kemp was in excess of 5 kilograms but less than 15 kilograms.

On February 22, 2007, Kemp pled guilty to the terms of his written agreement and on September 10, 2007, Kekmp was sentenced to 168 months in prison followed by five years of supervised release and an assessment of $100. Kemp filed a Notice of Appeal to the Seventh Circuit Court of Appeals. The United States Court of Appeals assigned an appeals court number to the appeal of 07-3680. On May 14, 2008, the Court of appeals denied the appeal in light of the appeal waiver signed by Kemp.

On October 5, 2009, Kemp filed a 2255 Motion which was denied on August 11, 2009. Kemp then filed for a Certificate of Appealability with the

3

United States on August 30, 2010. The United States Court of Appeals for the Seventh Circuit assigned a case number to the appeal of 10-3022. The Certificate of Appealability was denied by the Appeals Court on May 26, 2011.

## IV. COGNIZABLE ISSUES UNDER § 2255

The function of a §2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the imposition or length of his or his detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States" and is of constitutional magnitude which has a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); see also *United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion); (2) "that the court was without jurisdiction to impose such sentence" If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041(6th Cir.), *cert. denied*, 439 U.S. 998 (1978). To warrant relief for a non-constitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an

egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 116 S. Ct. 1701, 134 L. Ed.2d 800 (1996); (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974).

In §2255 proceedings, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. An evidentiary hearing in open court is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, and that a credibility determination is necessary in order to resolve the issue. Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." The remedy provided in §2255 is broad and flexible, and entrusts the federal courts

5

with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963).

The Sixth Amendment guarantees the right to effective assistance of counsel in criminal prosecutions. See *Strickland v. Washington,* 466 U. S. 668 (1984). As such, ineffective assistance of counsel claims are cognizable in a §2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U.S. 365, 371-79 and n.3 (1986); *Strickland*, supra. The Sixth Amendment also entitles a defendant to the assistance of counsel at every critical stage of a criminal prosecution. *Kirby v. Illinois,* 406 U.S. 682, 690 (1972). Critical stages are those steps of a criminal proceeding that hold significant consequences for the accused. See *Bell v. Cone,* 535 U.S. 685, 695- 96 (2002). Thus, a defendant is entitled to counsel at any proceeding where an attorney's assistance may avoid the substantial prejudice that could otherwise result from the proceeding. See *Coleman v. Alabama* 399 U.S. 1, 9 (1970).

To prevail on an ineffective assistance of counsel claim, Kemp must show: (1) that his "counsel's representation fell below an objective standard of reasonableness: and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The first

*Strickland* requirement is commonly called the "performance" prong and the second is called the "prejudiced" prong. See *Strickland,* 466 U. S. at 687. Further, Kemp must show that counsel's errors were prejudicial and deprived him of a "fair trial", or in other words, a trial whose result is reliable. *Id.*

The familiar two-part test of *Strickland* referenced above has been applied by the Supreme Court and the Seventh Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance in all phases of the proceedings. *Id.* Defendants can raise ineffective assistance claims concerning performance before trial *Kimmelman v. Morrison,* 477 U. S. 365, 371- 79, performance during trial, *Strickland,* 466 U.S. at 686, 87, and performance at sentencing, *Glover v. United States,* 531 U. S. 198 (2001).

If counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," the adversarial process itself becomes presumptively unreliable. *United States v. Cronic,* 466 U. S. 648, 659 (1984).

## V. <u>ARGUMENT</u>

**A.    Counsel grossly misinformed Kemp of his eligibility for Parole in discussing the plea agreement at hand and during plea negotiations counsel, failed to properly advise his client of the term of imprisonment he could face by accepting the plea bargain.**

Counsel grossly misinformed Kemp of the amount of time that Kemp would receive when discussing Kemp's cooperation with the government and the benefits

of the plea agreement offered to Kemp by the Government. During plea negotiations counsel failed to properly advise his client of the term of imprisonment he could face by accepting the plea bargain. Neither did he adequately bargain for the best deal he could get for Kemp, as seen in the conditions of the plea agreement.

With respect to the right to effective counsel in plea negotiations, a proper beginning point is to discuss two cases considering the role of counsel in advising a client about a plea offer and an ensuing guilty plea: *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); and *Padilla v. Kentucky*, 559 U.S. 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).

*Hill* established that claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland.* The Missouri Court of Appeals, applying the two part test in *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) determined first that defense counsel had been ineffective and second that there was resulting prejudice.

In *Hill,* the decision turned on the second part of the *Strickland* test. There, a defendant who had entered a guilty plea claimed his counsel had misinformed him of the amount of time he would have to serve before he became eligible for parole.

But the defendant had not alleged that, even if adequate advice and assistance had been given, he would have elected to plead not guilty and proceed to trial. Thus, the Court found that no prejudice from the inadequate advice had been shown or alleged.

In *Padilla,* the Court again discussed the duties of counsel in advising a client with respect to a plea offer that leads to a guilty plea. *Padilla* held that a guilty plea, based on a plea offer, should be set aside because counsel misinformed the defendant of the consequences of the conviction. The Court made clear that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel."

In *Strader v. Garrison,* 611 F.2d 61, 65 (C.A.4 1979), "[T]hough parole eligibility dates are collateral consequences of the entry of a guilty plea of which a defendant need not be informed if he does not inquire, when he is grossly misinformed about it by his lawyer, and relies upon that misinformation, he is deprived of his constitutional right to counsel". Incompetent advice distorts the defendant's decision making process and seems to call the fairness and integrity of the criminal proceeding itself into question.

In *Strickland,* 466 U.S., at 686, 104 S.Ct. 2052, the court states "In giving meaning to the requirement [of effective assistance of counsel], we must take its

9

purpose—to ensure a fair trial—as the guide". When a defendant opts to plead guilty without definitive information concerning the likely effects of the plea, the defendant can fairly be said to assume the risk that the conviction may carry indirect consequences of which he or she is not aware. That is not the case when a defendant bases the decision to plead guilty on counsel's misrepresentation of a consequence of the plea bargain. It seems hard to say that the plea was entered with the advice of constitutionally competent counsel—or that it embodies a voluntary and intelligent decision to forsake constitutional rights. Kemp's case should be vacated and a direct appeal ordered.

**B.     Whether the Court erred by sentencing Kemp to an enhanced sentence not shown in the Indictment or decided by a jury.**

Since Kemp' Judgment was entered, the United States Supreme Court decided *Alleyne v. United States*, 133 S. Ct. 2151 (2013). The Court in *Alleyne* overruled *Harris v. United States,* 536 U.S. 545 (2002) and concluded that:

> "Any fact that by law increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury,"

In *Alleyne*, the Court addressed Allen Ryan Alleyne's ("*Alleyne*") conviction. The jury verdict in that case indicated that *Alleyne* had "used or carried a firearm during and in relation to a crime of violence, but did not indicate a finding that the firearm was brandished." *Alleyne*'s presentence report recommended a seven-year minimum sentence on the § 924(c) count for brandishing a firearm, in accordance with § 924(c) (1) (A) (ii). (*Id.*). Also, the district court sentenced *Alleyne* to seven years imprisonment, despite his objection that "raising his mandatory minimum sentence based on a sentencing judge's finding that he brandished a firearm" violated his Sixth Amendment right to a jury trial. The Fourth Circuit affirmed, noting that *Alleyne*'s argument was foreclosed by *Harris*. The Supreme Court ultimately overruled *Harris*, noting it could not be reconciled with *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In doing so, the Court recognized that *Apprendi* both "concluded that any 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed' are elements of the crime" and held that the "Sixth Amendment provides defendants with the right to have a jury find those facts beyond a reasonable doubt." Because a fact triggering a mandatory minimum impacts the prescribed sentencing range, it follows, then, that a "fact increasing either end of the [sentencing] range produces a new penalty and constitutes an ingredient of the offense." Facts that increase the legally prescribed floor "*aggravate*" the punishment and, as the Court opined,

11

these facts must therefore be submitted to the jury and found beyond a reasonable doubt, in accordance with the Sixth Amendment.

In this case, Kemp' sentence was enhanced for prior convictions and career criminal offender status as recommended by the probation officer in Kemp' Pre-Sentence Report and argued for by the government at his sentencing.

These enhancements were not alleged in the Criminal Indictment and were not found beyond a reasonable doubt by the jury. On June 9, 2012, the Supreme Court decided *DePierre v United States*, 131 S.Ct. 2225, 2237(2011). In *DePierre,* the Court stated that a district court can only consider a penalty enhancement if it had been charged in the indictment and/or proven beyond a reasonable doubt to the jury. If that finding is not part of the record of conviction, *DePierre* holds that the defendant has not been convicted of that fact.

At the time of Kemp' conviction, it was well settled case law (prior to *Apprendi*), that an enhancement could be used to increase a mandatory minimum and/or maximum sentence. Nevertheless, in conformity with standard practice adopted by district courts following the promulgation of the U.S. Sentencing Guidelines, Kemp' PSR recommended that the sentencing judge enter a finding for prior convictions;  and be considered a career offender. The Court adopted the PSR's recommendation.

Under 28 U.S.C. § 2255(f) (3), Kemp must file his claim within one year of June 17, 2013, the date on which *Alleyne* was decided. See *Dodd v. United States,* 545 U.S. 353, 354-355 (2005), holding that the date from which § 2255 Motion's period of limitations begins to run is the date on which the right is initially recognized by the Supreme Court, not the date on which the right is made retroactive."Alleyne establishes a new rule of constitutional law," (*Simpson v. United States*, 721 F.3d 875 (7th Cir. 2013)). A rule is new if "the result was not dictated by precedent existing at the time the defendant's conviction became final," (*Teague v Lane,* 489 U.S. 288, 301 (1989)).When a conviction is final, a "new rule" announced by the Supreme Court only applies if it is a substantive rule as shown in *Schriro v. Summerlin,* 542 U.S. 348, 351 (2004). A substantive rule is one that "decriminalize[s] a class of conduct [or] prohibit[s] the imposition of [certain] punishments on a particular class of persons," according to *Saffle v. Parks,* 494 U.S. 484, 494 (1990). These substantive rules are applied retroactively because they "necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal [or] faces a punishment that the law cannot impose upon [him]." See *Schriro,* 542 U.S. at 352.

Because *Alleyne* is a statutory interpretation, there should be no issue of retroactivity being granted according to *Fiore v White,* 353 U.S. 225 (2001). In *Fiore,* the Supreme Court explained that where a state's highest court for the first

13

time interprets a criminal statute to require proof of a particular element and that interpretation does not create new law, but merely clarifies what the law was at the time of a defendant's conviction; there is "no issue of retroactivity."

*Alleyne* is a "watershed rule" of criminal procedure. See *Saffle*, 494 U.S. at 495. The portion of *Alleyne's* holding that requires juries, and not judges, to find certain facts, is procedural, and thus subject to *Teague's* two limiting principles. See *Teague* 489 U.S. at 312. The new rule must promote both accuracy and implicate fundamental fairness (plurality).

In *Summerlin*, the Court held that the empirical evidence was just too equivocal to say that judicial fact finding diminishes accuracy. "For every argument why juries are more accurate fact finders, there is another why they are less accurate." The Court went on to note that its reasoning was further bolstered by its pre-*Teague* decision in *DeStefano v. Woods*, 392 U.S.631 (1968) (*per curiam*), wherein the Court refused to give retroactive application to *Duncan v. Louisiana*, 391 U.S.145 (1968) (right to jury trial). "If under *DeStefano* a trial held entirely without a jury was not impermissibly inaccurate, it is hard to see how a trial in which a judge finds only aggravating factors could be." *Schriro*, 542 U.S. at 357.

With that, *Schriro* laid to rest the idea that new rules of criminal procedure which implicate jury trial rights should be applied retroactively. What *Schriro* did

not do, however, is address *Alleyne's* dual-faceted holding, *vis-a-vis*, any fact that increases the mandatory minimum sentence must be proved beyond a reasonable doubt, and not by a preponderance of the evidence standard. In *Schriro*, 542 U.S. at 351 n.1, because Arizona law already required aggravating factors to be proved beyond a reasonable doubt that aspect of *Apprendi* was not at issue. Therefore, the identity of the fact finder (*i.e.*, judge or jury) is not at issue. Rather, it is the indispensable nature of the reasonable doubt standard, for it "impresses on the trier of fact the necessity of reaching a subjective state of certitude on the facts in issue," according to *Winship*, 397 U.S. 358, 364 (1970).

The question then, as *Schriro* asks, is whether the absence of the reasonable doubt standard "so seriously diminish[es] accuracy that there is an impermissibly large risk of punishing conduct that the law does not reach." *Schriro*, 542 U.S. at 355-56.

The reasonable doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. That standard provides concrete substance for the presumption of innocence-that bed-rock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law. . . A person accused of a crime . . . would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and

imprisoned for years on the strength of the same evidence that would suffice in a civil case. See *Winship*, 397 U.S. at 363.

Moreover, and consistent with *Schriro's* reliance on pre-*Teague* precedent, namely, *DeStefano*, to undercut the view that the jury trial right should be given complete retroactive effect, it should be noted that in a succession of cases, the Supreme Court has given complete retroactive effect to *Winship's* reasonable doubt standard (*Ivan V. v. City of New York*, 407 U.S.203 (1972); *Hankerson v. North Carolina*, 432 U.S.233 (1977)). As *Winship* so aptly demonstrates, "the major purpose" of its rule was to promote both accuracy and accord fair treatment. *Alleyne* has "altered our understanding" of the bedrock procedural elements essential to the fairness of the proceeding (*Sawyer v. Smith*, 497 U.S.227, 242 (1990)). Before *Alleyne,* it was universally accepted that facts which increase the minimum sentence did not run afoul of any constitutional guarantee. *Alleyne*, however, brought down Thor's hammer on the source of that universal acceptance, *McMillan v. Pennsylvania*, 477 U.S.79 (1986), and its progeny, *Harris v. United States*, 536 U.S.545 (2002), and reduced them to ash. It therefore cannot be reasonably argued that *Alleyne's* holding works only an incremental change in criminal sentencing. Compare with *Beard v. Banks*, 542 U.S.406, 420 (2004); *O'Dell v. Netherland*, 521 U.S.151, 167 (1997); *United States v. Sanders*, 247 F.3d 139, 150.

Nor can it be any longer argued that the error here does not taint the entire case because it merely concerns the "omission of only one 'element' of the offense, i.e.-drug quantity." *Sanders,* 247 F.3d at 149.   *Alleyne* makes abundantly clear, facts that increase the mandatory minimum sentence, "constitutes a new, aggravated crime." And in the vast majority of those cases, defendants are routinely convicted and sentenced above their mandatory minimum sentence based on two, three, or four facts (i.e., elements that were neither charged nor submitted to the jury continued). Compare *Neder v. United States,* 527 U.S.1, 1 (1999)(harmless error analysis feasible where erroneous instruction omitted only one "element of the offense"); *Mitchell v. Esparza,* 540 U.S.12, 16 (2003), with *United States v. Miller,* 372 Fed. Appx. 358 (CA4 2010) (applying enhancements in excess of mandatory minimum sentence for leadership, obstruction, and career offender provisions), and *United States v. Robinson,* 2008 U.S. App. Lexis 18309 (CA5 2008) (applying leadership and obstruction enhancements). By all accounts, these types of errors are "necessarily unquantifiable and indeterminate" *United States v. Gonzalez-Lopez,* 548 U.S.140, 150 (2006) (internal citation and quotation marks omitted). As such, they can no longer be cast aside.

Thus, *Alleyne's* procedural rule, *vis-a-vis,* any fact that increases the mandatory minimum penalty must be found by a jury beyond a reasonable doubt, has worked a "sweeping change" in the way that men are tried and sent to prison

(*Whorton v. Bockting*, 549 U.S.406, 421 (2007)). To prove the point, one need only look to the temporal journey culminating into *Alleyne's* new rule. Compare to *Danforth v. Minnesota*, 552 U.S.264, 271 (2008) which states "The source of a 'new rule' is the Constitution itself, and not any judicial power to create new rules of law. Accordingly, the underlying right necessarily pre-exists our articulation of the new rule". When the rule was first identified in *Apprendi v New Jersey*, 530 U.S. 466 (2000), it did not apply to state capital sentencing schemes as seen in *State v. Ring*, 200 Ariz. 267 (2001). However, it was later applied to state capital sentencing schemes (*Ring v. Arizona*, 536 U.S.584 (2002)). It was again applied to state sentencing guidelines in *Blakely v. Washington*, 542 U.S.296 (2004). After that, it was applied to the United States Federal Sentencing Guidelines. *United States v. Booker*, 543 U.S.220 (2005). Later, the rule was applied to criminal fines (*Southern Union Co. v. United States*, 132 S.Ct. 2344 (2012)). And finally, the rule was applied to mandatory minimum sentences. See *Alleyne,* supra.

Thus, *Alleyne's* animating principles--on its temporal journey, has effected a profound change, the likes of which have not been seen since the coronation of *Gideon v. Wainwright,* 372 U.S.335 (1963). It is for these reasons that *Alleyne* compels all the primacy and centrality that Gideon commands. Accordingly, *Alleyne* retroactive by the Supreme Court and should be applied in this case.

"Under our vaunted legal system, no man, however bad his behavior may be can be convicted of a crime for which he was not charged, proven and found guilty of or admitted to, in accordance with due process." See *Parr v. United States* 363 U.S. 370, 394 (1960). In sum, it is possible to view the consequences of this error in one of two ways: (1) Kemp was improperly sentenced to a greater penalty than the one authorized by Congress for the crime of which he was convicted; or (2) Kemp was improperly convicted because the crime of conviction was not fully alleged in the Indictment or found beyond a reasonable doubt by the jury.

Viewing the error as an error in sentencing, the prejudice is clear. The facts alleged in the Indictment and found beyond a reasonable doubt by the jury and the pre-*Booker* mandatory guideline sentencing system should have yielded a lower offense level.  Nonetheless, at sentencing, the judge was the deciding factor in that he found the prior convictions and career offender enhancements based on his adoption of the PSR.  In essence, the Court constructively amended Kemp' Indictment when the Court sentenced Kemp to one hundred sixty-eight (168) months. Because Kemp' enhancements were based on the PSR's recommendation and not found by the jury beyond a reasonable doubt or listed in the Indictment. As such, those enhancements violated the Sixth Amendment under *Alleyne* and its predecessors.

With regard to prejudice, the Court's error affected Kemp' substantial rights and increased his sentence to a significantly harsher sentence which actually prejudiced him under the Sixth Amendment. See *Glover v. United States,* 531 U. S. 198 (2001) ("any amount of actual jail time has Sixth Amendment significance."). Accordingly, Kemp' sentence should be vacated for resentencing.

**C.    Whether the Court erred in enhancing Kemp. In *Descamps v United States*, a 2013 Supreme Court case regarding prior offenses of a Career Criminal, a new categorical approach was mandated for enhancing defendants on predicate convictions.**

The District Court's ruling in this manner was erroneous. Kemp's case closely resembles the situation in the Suprme Court case of *Descamps v United States* Case No. 11-9540, decided June 20, 2014 from the enhancements to his prior convictions. Clearly this is an error by the court as *Descamps* has now become retroactive.

The case was decided 8-1 with the Honorable Justice Elena Kagan writing the majority opinion. The CCA provides for additional penalties for those who have been convicted before of violent crimes, and the case revolved around conflicts between state and federal definitions of burglary. The court made conviction under the CCA more difficult by striking down the modified categorical approach for crimes with a single and indivisible set of elements. At no time should the Court refuse to consider any evidence which may acquit or decrease the amount of punishment handed out during sentencing.

In the past year, the Supreme Court decided the matter of *Descamps v. United States.* In *Descamps,* Supreme Court 11-9540, the Supreme Court demands that when calculating sentencing guidelines that all Courts must be most specific when judging sentence levels based upon prior convictions. The Court made conviction under the ACCA and CCA more difficult by striking down the modified categorical approach for crimes with a single and indivisible set of elements as well as enhancing a defendant without adhering to the modified categorical approach to sentencing. No longer can a court say that violations are all the same when it concerns prior sentencing and in determining a criminal history level. The Supreme Court's decision in *Descamps* scolded the Ninth Circuit for not only had the Ninth Circuit ignored the CCA's focus on a prior "conviction" rather than the underlying conduct, but its licensing of judicial fact finding "beyond the recognition of a prior conviction" raised precisely the Sixth Amendment problem that the categorical approach had been designed to avoid. Finally, the Ninth Circuit's approach would regularly create practical difficulties for courts trying to figure out what "a defendant admitted in a plea colloquy, or a prosecutor showed at trial," an unfairness for the defendant who had not bothered to contest a (then) legally irrelevant factual allegation.

In the instant matter it was clearly evident that Kemp had prior convictions. Counsel did not object to Kemp being enhanced by prior convictions. Kemp did

not clearly understand that he would be enhanced to the point of a career criminal and counsel should have fought harder for him not to have been. Kemp didn't receive the minimum recommended sentence, but instead the court sentenced him closer to the high end of the guideline setting.

Simply stated, the prior sentences for which Kemp was held responsible and given a higher criminal history level should be removed from the sentencing calculation and as a result Kemp's case should be reexamined, recalculated and a lower sentencing should be awarded to Kemp.

## CONCLUSION

For the above and foregoing reasons, Kemp's conviction and sentence should be vacated for further proceedings. In the alternative, Kemp respectfully requests that this Court hold an evidentiary hearing so that he may further prove his meritorious grounds, resolve facts in dispute and expand an incomplete record.

Respectfully submitted,

Date: 6 ~ 10 ~ 14

DeMarko Kemp
Reg. No. 08174-028
USP Marion
P.O. Box 1000
Marion, IL 62959
Appearing *Pro Se*

## DECLARATION OF DEMARKO KEMP

I, DeMarko Kemp, declarant herein, declare and attest to the facts in the above and foregoing Motion under 28 U. S. C § 2255 (f) (3) to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody to be true and correct to the best of my knowledge under the penalty of perjury pursuant to 28 U. S. C. § 1746.

DATED: June _10_, 2014

_____
DeMarko Kemp

## Certificate of Service

I hereby certify that I mailed one copy of my Objection to Court's Review and Report with first class U.S. Postage prepaid and affixed thereon to the Office of the United States Attorney for the Southern District of Indiana, Evansville Division.

_6 — 10 — 14_
DATE:

_____
DeMarko